**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EFRAIN LUNA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF WESTFIELD,<br><br>　　　　　　Defendant. | Civil Action No. 3:24-cv-30109-MGM |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT CITY OF WESTFIELD'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
COUNT I AND WILLFULNESS**</u>

325874947v.3

Plaintiff asserts two alternative theories for his overtime pay claims in this matter, one based on a 40-hour workweek (Count I), and another based on a more flexible alternative work period that the Fair Labor Standards Act ("FLSA") provides for public safety personnel (Count II).  Only one of these theories is legally viable, in light of Defendant City of Westfield's express adoption of that alternative FLSA work period.  Count I of Plaintiff Efrain Luna's Complaint,[1] which is based on claims that he routinely worked more than forty (40) hours in a week for Defendant City of Westfield, thus fails as a matter of law. The City likewise moves for summary judgment as to its lack of willfulness because no facts in the record would support a finding that any violation of the FLSA during the relevant time period was knowing or the product of reckless disregard for the City's legal obligations, as a finding of willfulness requires.

## FACTUAL BACKGROUND

The facts are straightforward and not in dispute. Plaintiff Efrain Luna was a police officer with the City of Westfield from 1989 until his retirement in 2025. *See* Defendant's Statement of Undisputed Material Facts ("SUMF"), ¶¶ 14, 37. At all times during his employment, Luna was represented by a police officers' union, initially the International Brotherhood of Police Officers ("IBPO") and later the Westfield Patrol Officers Coalition (the "Union"). *Id*. ¶¶ 15, 28. For the last 13 months of his employment, he was on medical leave and paid his full salary each week but performed no compensable work. *Id*. ¶¶ 35-37.

For several years during his time as a police officer, Luna served as a steward and officer of the IBPO, culminating in his service as IBPO President. *Id*. ¶¶ 16-18, 21.  During that time, he participated in numerous collective bargaining sessions as a representative of the IBPO. *Id*. ¶ 18. He also participated in at least six grievances, but he never filed any grievance related to the

---

[1] Although the Complaint is styled as a collective action pursuant to 29 U.S.C. § 216(b), Luna has not moved for conditional certification. Accordingly, this remains a single-plaintiff action.

2

subject-matter of this lawsuit. *Id*. ¶¶ 22-26. He has been paid overtime in accordance with applicable collective bargaining agreements negotiated by the Union at all times relevant to the Complaint, including numerous overtime payments that exceed the requirements of the FLSA. *Id*. ¶ 33.

Luna became aware of language in the governing collective bargaining agreement providing for an alternative pay period for overtime purposes predicated on 29 U.S.C. § 207(k) (the "207(k) Work Period") when he was Vice President of the IBPO, in or about the mid-nineties. *Id*. ¶ 19. Since at least 1996, the 207(k) Work Period was expressly incorporated into the parties' collective bargaining agreement as follows:

> Compensatory time shall accrue to a limit of 480 hours. Compensatory time for time worked in excess of 171 hours in any 28 day work period shall be awarded at the rate of 1 and 1/2 times said hours worked.

*Id.* ¶ 7.

At some point following Luna's service as President of the IBPO, two significant events occurred: the current Union supplanted the IBPO, and the City negotiated a new contract with the new entity representing police officers. *Id*. ¶ 29-30. One of the topics bargained between the City and the Union was the 207(k) Work Period for the purpose of overtime. *Id*. ¶¶ 9-11. The following language is included in Section 24.4 of the 2026-2019 and 2022-2025 CBA:

> The standard work schedule shall consist of four (4) consecutive days of work consisting of eight (8) hours, thirty (30) minutes continuous hours of duty per day, followed by two (2) consecutive days off. The department will not assign an officer to an assignment with a work schedule which varies from the standard work schedule unless the employee agrees in advance to take the assignment with notice of its work schedule. The City declares a twenty-eight (28) day work period in conformity with section 7(k) of the FLSA.

> *Id.* ¶¶ 2, 5

325874947v.3

In effect, the working schedule provided by the collective bargaining agreement averaged out to 40 hours per week, after accounting for longer weeks of 42.5 hours and shorter weeks of 37 hours in a recurring rotation of 4 working days followed by 2 days off. *Id*. ¶ 13.

Under the applicable CBAs, overtime work was considered to be any work outside of an officer's regular schedule. *Id*. ¶ 38. Overtime shifts were paid at premium rates, either 1.5 or 2 times an officer's base rate depending on the specific circumstances of the overtime. *Id*. ¶ 39. Overtime payments were also subject to certain minimum hours that would be paid, even if an officer worked less than the hours for which payment was received. *Id*. ¶ 40. As a result, officers could be, and often were, paid contractual premium overtime rates, even when they had worked less than 40 hours in a week. *Id*. ¶ 41. Because these premium rates were between 1.5 and 2 times each officer's base hourly rate, *id*. at ¶ 39, the City considered its obligations to have been met in full through payment of those premium rates for all extra hours worked, *id*. ¶ 43.

Luna consistently worked considerably more hours than his peers. *Id*. ¶ 32. He also filed two grievances about overtime in 2022.[2] *Id*. ¶¶ 24-25. Notwithstanding Luna's regular extra hours, extensive knowledge of the CBA, and obvious willingness to file grievances, he never filed a grievance pertaining to the 207(k) Work Period or the City's failure to pay overtime based one the more standard 40-hour per week threshold at any time prior to filing this lawsuit. *Id*. ¶ 26.

Luna was paid in accordance with the premium pay requirements of the applicable CBAs which required 1.5 and 2 times his base salary. *Id.* ¶ 33. However, with respect to Section 24.4 of the CBAs, there is a material dispute of fact as to whether Luna individually may have worked hours in excess of the 207(k) Work Period during one or more workweeks during the three years

---

[2] These grievances concerned payment of contractual premium overtime for overtime shifts and holidays, rather than Luna's regular schedule and/or work in relation to any Work Period. SUMF ¶¶ 24-25.

325874947v.3

prior to his filing this lawsuit and, if so, whether there is any money owing to Luna from the City. *Id.* ¶ 12. The undisputed evidence clearly establishes, however, that any such underpayment (if at all) was inadvertent, that the City complied in good faith with the terms of the applicable CBA at all relevant times as advised by counsel during collective bargaining, and Luna never notified of the City of any alleged underpayment connected to the Work Period prior to the present lawsuit. *Id.* ¶¶ 8, 26, 42-43.

**PROCEDURAL POSTURE**

Although the Complaint is styled as a collective action pursuant to 29 U.S.C. § 216(b), Luna has not moved for conditional certification. *See generally* Dkt. Accordingly, this remains a single-plaintiff action. Discovery as to Luna's claims closed on August 25, 2025. Dkt. No. 22. Thereafter, the case was stayed at the request of the Parties. Dkt. Nos. 24-30. As the Parties were unable to agree about certain purely legal issues, they jointly requested a briefing schedule to resolve their disagreement as of a matter of law on April 2, 2026. Dkt. No. 34. The Parties' request was granted. Dkt. No. 35. Accordingly, the City brings this Motion to resolve two issues: (i) that the City effectively adopted a 207(k) Work Period with respect to payment of its police officers, including Luna, and (ii) that any underpayment by the City with respect to payment of overtime to Luna during the relevant period was not willful.

**ARGUMENT**

Summary judgment is appropriate where the moving party shows that (i) "there is no genuine dispute as to any material fact" and (ii) "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where a defendant's motion for summary judgment demonstrates 'an absence of evidence to support the nonmoving party's case,' the plaintiff must adduce specific facts showing that a trier of fact reasonably could find in his favor." *Murray v. Warren Pumps*,

5

LLC, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted). Absent a dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir. 1992).

Applying these summary judgment standards to the uncontested facts, the City is entitled to summary judgment to Count I of the Complaint based on the City's establishment of a 28-day work period pursuant to 29 U.S.C. § 207(k), and as to the purely damages-related issue of willfulness with respect to any alleged underpayment of overtime to Luna.

I.    **Pursuant to 29 U.S.C. § 207(k), the Proper Threshold for Determining Plaintiff's Eligibility for Overtime Compensation Is 171 Hours in 28 Days - Not 40 Hours in 7 Days.**

Plaintiff contends that he is entitled to overtime compensation for all hours "in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which [he] was employed as required by the FLSA." Compl., ¶ 40. However, pursuant to provisions of the FLSA applicable to public law enforcement employees, the proper threshold for Luna's entitlement to overtime compensation is 171 hours per 28 days, reflecting the City's 207(k) Work Period, not 40 hours per 7 days.

a.    *Congress created a unique overtime threshold for police officers.*

The FLSA requires most employers to provide overtime pay for each hour worked beyond 40 in a workweek. 29 U.S.C. § 207(a)(1). However, Congress created a partial exemption for employees of a "public agency engaged in fire protection or law enforcement activities." 29 U.S.C. § 207(k) ("Section 207(k)"). This partial exemption:

> raises the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it *accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week.*

6

*O'Brien v. Town of Agawam*, 350 F.3d 279, 290 (1st Cir. 2003) (emphasis added).[3] Under Section 207(k), the overtime threshold for law enforcement officers who work a 28-day work period is 171 hours, which roughly translates to 43 hours per week. 29 C.F.R. § 553.230(c).

      b.     *The City established a 28-day work period via the CBAs.*

Although "work period" is not defined by statute, the enabling regulations state that "work period refers to any established and regularly recurring period of work [between 7 and 28 consecutive days]." 29 C.F.R. § 553.224(a). Both the Department of Labor and courts look to the pay period and duty cycle of officers to determine the work period, although neither alone is dispositive. *Id.*; *see also Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419, at *11 (E.D. Cal. May 22, 2015) (looking to the City's 14-day pay period as relevant to the Section 207(k) analysis). While the City bears the burden of proof, First Circuit precedent dictates that establishing a Section 207(k) work period is "not a high hurdle." *O'Brien*, 350 F.3d at 291 n.21; *see also Martin v. Coventry Fire Dist.*, 981 F.2d 1358, 1360-61 (1st Cir. 1992) (finding 7-day work period by default in absence of evidence that municipality sought to establish a work period under Section 207(k)). The beginning and ending of the work period may also be subject to change over time, 29 C.F.R. § 553.224(a), such that the continuous operation of a single work period is also not dispositive. Nor is it even necessary that in all cases that employees be informed of a work period's existence for it to be effectively adopted. *Calvao*, 599 F.3d at 15-17.

The official written adoption of an alternative work period, particularly where it has been shared with employees, is dispositive evidence of establishment of such an alternative work period. *See, e.g.,* . at 17-18 (upholding the establishment of a Section 207(k) period where discussed in a

---

[3] Section 207(k) illustrates Congress's attention to "the special concerns of States and localities[.]" *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 n.17 (1985). "The work period concept was intended to ease the overtime burdens of certain public employers," namely police and fire departments. *Calvao v. Town of Framingham*, 599 F.3d 10, 14 (1st Cir. 2010) (citations omitted).

325874947v.3

town memo); *McGrath v. City of Somerville*, 419 F. Supp. 3d 233, 251 (7-day 207(k) work period referenced in the CBA was established for certain officers); *Adams v. City of Kansas City, Missouri*, No. 19-CV-00093-W-WBG, 2021 WL 4484551, at *5 (W.D. Mo. Sept. 29, 2021) (holding 28-day work period outlined in a CBA was established under 207(k)); *contrast O'Brien*, 350 F.3d at 291  (holding 4-and-2 schedule did not qualify as a 207(k) work period where "[t]he Town does not point to a single statement or document indicating that it adopted a work period longer than six days").

In other words, for Section 207(k) to apply, a "City need only have announced that it had a work period between seven and twenty-eight days irrespective of whether the actual duty cycle or pay periods of the officers in question actually coincided with the work period." *Harris v. City of Boston*, 312 F. Supp. 2d 108, 115 (D. Mass. 2004); *see also O'Hara v. Menino*, 312 F. Supp. 2d 99, 105 (D. Mass. 2004) (stating that a Section 207(k) work period only needs to be "announced" to be established).

Under this standard, there is no basis to dispute that the City adopted the 207(k) Work Period, which (i) was "declared" in the CBA between the City and Union following collective bargaining, (ii) was readily known to Luna, and (iii) specifically identifies Section 207(k). *See* 2022-2025 CBA, Section 24.4; *contrast MacGilvray v. City of Medford*, 585 F. Supp. 2d 175, 178 (D. Mass. 2008) (denying summary judgment for both parties where there was a factual dispute over whether plaintiffs knew about 207(k) work period). The language and context of the CBA alone establish the Work Period.

     c.      *The City established a 28-day work period via pay periods.*

Even if the express language of the CBA were somehow insufficient to conclude that the City established its 207(k) Work Period, employees' 14-day pay periods are also relevant. While neither the duty cycle nor pay period *must* coincide with a work period, the duration of pay periods

8

is relevant to the analysis of whether a work period is established. *See Harris*, 312 F. Supp. 2d at 115; *Callahan*, 2015 WL 2455419, at *11 (holding that the parties operated under a "14-day recurring work period" based on the plaintiffs' payroll schedules and a memorandum of understanding); *Mollichella v. Bd. of Supervisors W. Brandywine Twp.*, No. 18-cv-4868-JMY, 2020 WL 1904593 (E.D. Pa. Apr. 16, 2020) (Section 207(k) work period established by police officers' schedule of six 12-hour days in a 14-day pay period).

The City's 207(k) Work Period connects two 14-day pay periods, which are regularly-recurring periods maintained by the City's payroll department for the benefit of all police officers. *See* 2022-2025 CBA, § 24.4. Police officers working the 4-and-2 schedule dictated by § 24.4 work four days per calendar week in 2 out of every 6 weeks, meaning that their pay based on schedule could vary significantly from paycheck to paycheck, if they were paid on a weekly basis. *Id.* The City and Union, likely seeking to avoid this outcome, negotiated the method and timing of payment to align the City's pay practices with the 207(k) Work Period. *See Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 60 (2d Cir. 1998); 29 C.F.R. § 541.4 (permitting FLSA requirements to be modified by, *e.g.*, "higher wages" and a "shorter workweek" in collective bargaining agreements).

Accordingly, the CBA reflects that the City and the Union negotiated for a pay schedule which averages out their hours to 40 per week, provides for consistent paychecks from period-to-period, and is based on a payroll cycle rather than a 6-day duty period provided by the 4-and-2 rotation, and which incorporates all of these considerations into a pay rate which is far higher than the statutory minimum provided by the FLSA. *See, e.g., Rogers*, 148 F.3d at 60; 29 C.F.R. § 541.4; 2022-2025 CBA, § 24.4 (declaring work period), § 24.3 ("Employees shall receive work salaries equal to forty hours per week"); *cf. Parris v. Sheriff of Suffolk Cnty.*, 93 Mass. App. Ct. 864, 868 (2018) (permitting modification to the Massachusetts Wage Act via collective bargaining). This

course of events would be sufficient to establish that the City properly adopted a 207(k) Work Period, even if the parties had not expressly incorporated that term into their collective bargaining agreement. *See, e.g., Rosano v. Township of Teaneck*, 754 F.3d 177, 187-88 (3d Cir. 2014) (finding that seven and nine day work periods under 5-and-2 and 6-and-3 schedules were sufficient to qualify for the exemption even without any intent by the City to formally adopt a 207(k) work period); *Lemieux v. City of Holyoke*, 259 F.R.D. 13, 16-17 (D. Mass. 2009) (defense available for 4-and-4 schedule even without announcement).

d.    *CBA provisions for contractual overtime do not undermine the City's entitlement to the Section 207(k) exemption.*

By complying with the requirements of the CBA, the City has compensated Luna at a premium contractual overtime rate for hours worked outside of his regular working schedule, even when he worked less than 171 hours in a 28 day period, or lower than 40 hours in a 7 day period. Such payments, made in excess of the City's obligations under both Section 207(k) and the overtime requirements of the FLSA, do not undermine the City's ability to avail itself of its 207(k) Work Period. *Adair v. City of Kirkland*, 185 F.3d 1055, 1061-62 (9th Cir. 1999) (Section 207(k) work period can be established even if (i) city did not conform its payroll practices to it; and (ii) city's payroll administrators were unfamiliar with Section 207(k) work period); *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1152 (10th Cir. 1992) (simply because establishment of a Section 207(k) work period "affected little change does not render it a fiction."); *Franklin v. City of Kettering, Ohio*, 246 F.3d 531, 535-36 (6th Cir. 2001) (Section 207(k) work period established even where neither duty cycle nor pay period coincided with work period). Indeed, a Section 207(k) work period is established even where a collective bargaining agreement provides different payment terms. *Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 806 (11th Cir. 1992). That the City paid overtime premiums without requiring that Plaintiff exceed the 171-hour threshold does not impact its

10

establishment of the 207(k) Work Period, or its entitlement to the Section 207(k) exemption from the FLSA's 40 hour overtime threshold. *See id.*

The undisputed evidence, particularly when viewed in light of the low threshold for a municipal employer to meet the requirements of Section 207(k), establishes that the City meets the Section 207(k) exemption as to Luna and any other police officer during the relevant period. As a result, the Court should grant summary judgment to the City as to Count I of the Complaint. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018) (holding "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation") (internal citations and quotations omitted).

## II.    Luna Cannot Establish Willfulness, and the FLSA's Two-Year Statute of Limitations Applies

Luna's attempt to invoke the FLSA's three-year statute of limitations fails because he offers no evidence—and cannot offer any—that the City knowingly violated his rights or acted with reckless disregard of its legal obligations, even if the City's complex wage-payment regime for police officers resulted in any underpaid to Luna during the relevant period (which the City denies). Under the FLSA, it is the employee's burden to establish that the employer actually knew its conduct violated the statute or recklessly disregarded whether its conduct was lawful in order to avail himself of the extended, three year statute of limitation. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–35 (1988); *see also Clark v. Cap. Vision Servs.*, No. 22-cv-10236-DJC, 2024 WL 3458525, at *30 (D. Mass. July 18, 2024) (granting summary judgment to employer on willfulness where plaintiff "provides no evidence that [defendant] ignored employee complaints of FLSA misclassification or underpayment, that [defendant] was subject to any DOL investigation or other litigation for its compensation practices or that [defendant] acted deceitfully in

11

maintaining timekeeping records"); *Solis v. La Familia Corp.*, No. 10-CV-2400-EFM-GLR, 2013 WL 589613, at \*7 (D. Kan. Feb. 14, 2013) (where no willful conduct is specifically alleged in third year preceding action, two year statute of limitations applies); *Donavan v. I and J, Inc.*, 567 F. Supp. 93, 107 (D.N.M. 1983) (no extension of statute of limitations because period of more than two years before filing of complaint was "a time when the Defendants were not in willful violation of the [FLSA]"). Luna cannot meet that threshold based on the record evidence in this case.

As the Supreme Court has acknowledged, "Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin*, 486 U.S. at 132. Even a decision that is unreasonable or negligent is insufficient to establish a willful violation. *See id*. at 134-35 & n.13 (violations are not willful merely because they are unreasonable); *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F. 2d 1510, 1515 (1st Cir. 1991) ("A violation of the FLSA cannot be considered willful unless the employer acted not only unreasonably, but recklessly"); *Reich v. Newspapers of New England, Inc*., 44 F.3d 1060, 1080 (1st Cir. 1995); *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 679 (failure to make further inquiry into employee's exempt status not willful because such an outcome would "embrace[] a negligence standard of liability" that the Supreme Court "expressly rejected") (quoting 29 C.F.R. § 578.3(c)(3)). Accordingly, indicia of willfulness include "ignoring repeated employee complaints about violations," "lack of diligence in researching FLSA requirements," failure to keep payroll records, intentional manipulation of payroll records, and paying employees "off the books." *Clark*, 2024 WL 3458525, at \*29 (citations omitted).

Luna makes no allegations, and the record is devoid of evidence, that could support his claim of willfulness here. To extend the limitations period, he must show a willful violation during the third year before suit, *i.e.*, between September 5, 2021 and September 5, 2022. *See, e.g., Clark*,

2024 WL 3458525, at *29 (plaintiff bears burden of showing willful violation during third year before suit). During that period, the record establishes that the operative language declaring the existence of the Section 207(k) work period was front and center in the 2022-2025 CBA, and in fact had existed in the CBA since at least the 2016-2019 version. As Luna testified, both the City and Union were represented by counsel during the collective bargaining process. SUMF, ¶ 16.  It is implausible that either side would knowingly agree to unlawful contractual terms. There is absolutely no record evidence that Luna—or anyone else—suggested to the City that its pay practices with respect to the 207(k) Work Period were unlawful, nor is there any evidence that the City manipulated or failed to keep records, or otherwise failed to exercise good faith compliance with applicable law and contractual terms. *Cf. Clark*, 2024 WL 3458525, at *29.

Because the record is devoid of any evidence that the City acted knowingly or recklessly with respect to any alleged violation of law, the Court must apply the FLSA's presumptive two-year statute of limitations, and summary judgment should enter in the City's favor.

## CONCLUSION

Because the undisputed record evidence clearly established that the Section 207(k) Work Period applied to Luna (and every other City police officer during the relevant period), and that the City never willfully violated the FLSA with respect to Luna's compensation, the City respectfully requests that the Court grant summary judgment in the City's favor as to Count I and the issue of willfulness.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(d), Defendant City of Westfield respectfully requests a hearing on its motion for summary judgment.

***

325874947v.3

DATED: June 5, 2026

Respectfully submitted,

By: */s/ Elizabeth L. Sherwood*

    Barry J. Miller (Bar No. 661596)
    bmiller@seyfarth.com
    Alison H. Silveira (Bar No. 666814)
    asilveira@seyfarth.com
    Elizabeth L. Sherwood (Bar No. 687866)
    bsherwood@seyfarth.com
    Abigail D. Skinner (Bar No. 709705)
    askinner@seyfarth.com
    SEYFARTH SHAW LLP
    Seaport East
    Two Seaport Lane, Suite 1200
    Boston, Massachusetts  02210-2028
    Telephone: (617) 946-4800
    Facsimile:  (617) 946-4801

ATTORNEY FOR DEFENDANT
CITY OF WESTFIELD

14

325874947v.3

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Elizabeth L. Sherwood
Elizabeth L. Sherwood

15

325874947v.3