**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(WESTERN DIVISION)**

**EFRAIN LUNA, Individually and on Behalf of**
**All Other Persons Similarly Situated,**
**Plaintiffs,**

**v.**

**CITY OF WESTFIELD,**
**Defendant**

**C.A. No. 3:24-cv-30109-MGM**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT AS TO COUNT I AND WILLFULNESS AND IN**
**SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY**
**JUDGMENT AS TO COUNTS I AND II AND WILLFULNESS**

**INTRODUCTION**

Defendant City of Westfield asks this Court to treat a single sentence in a collective bargaining agreement as a complete Fair Labor Standards Act compliance program. The undisputed record shows it is nothing of the kind. The City cannot say when its claimed 28-day work period begins or ends. It cannot identify who adopted the period, when, or why. It has no payroll notation, no calendar, no audit, and no calculation that applies it. It cannot name a single officer, including Mr. Luna, who has ever been paid overtime in accordance with it. And every City employee assigned responsibility for wage-and-hour compliance or police payroll testified, without exception, that he or she did not understand the 28/171 framework, received no training on it, and never used it. Facts ¶¶ 29-36, 41-54, 71-82.  That record defeats Defendant's motion on multiple grounds.

*First*, the City's overtime violation does not depend on which threshold applies. Whether Mr. Luna was owed overtime after 40 hours in a workweek under § 207(a) or after 171 hours in a valid 28-day period under § 207(k), the rate of that overtime had to be calculated using his FLSA

"regular rate." The City instead calculated overtime using a flat contractual base rate and never included shift differential pay, education incentive pay, AED/defibrillator stipend pay, or Narcan stipend pay in the calculation. Facts ¶¶ 10, 13-23, 52-54. First Circuit and District of Massachusetts authority hold, without exception, that CBA-mandated remuneration of this kind must be included in the regular rate. *O'Brien v. Town of Agawam*, 350 F.3d 279, 294-97 (1st Cir. 2003); *McGrath v. City of Somerville*, 419 F. Supp. 3d 233, 252-53 (D. Mass. 2019); *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 157 (D. Mass. 2007). That violation is undisputed on this record and independently entitles Plaintiff to summary judgment on liability under Counts I and II, regardless of how the Court resolves the § 207(k) dispute.

*Second*, the undisputed record defeats the argument that the 207(k) exception applies. Section 207(k) is Defendant's affirmative defense, and Defendant must prove by clear and affirmative evidence that it established a bona fide, regularly recurring 28-day work period and actually put that period into effect. *Calvao v. Town of Framingham*, 599 F.3d 10, 15-18 (1st Cir. 2010); *O'Brien*, 350 F.3d at 290-92 & n.21; 29 C.F.R. § 553.224(a). Mr. Luna's patrol schedule was a recurring six-day duty cycle, four days on, two days off, that cannot mathematically recur within a 28-day window. Facts ¶¶ 3, 6-7. The City's payroll system was never configured to track a 28-day period; its own personnel could not identify when any such period begins or ends; and its payroll records contain none of the work-period notations the governing regulation requires. Facts ¶¶ 35-36, 45-54, 59-64, 71-82; 29 C.F.R. § 553.51. Absent a qualifying work period actually put into effect, the ordinary 40-hour threshold controls, and the undisputed evidence that Mr. Luna worked more than 40 hours in numerous workweeks independently entitles Plaintiff to summary judgment on Count I. Facts ¶¶ 3, 7, 11.

*Third*, the City's request for summary judgment on willfulness asks this Court to ignore what witnesses said under oath. The City knew its CBA invoked § 207(k) and a 171-hour threshold. Facts ¶ 55. It assigned specific officials responsibility for wage-and-hour compliance and police department payroll. Facts ¶¶ 25-28. Yet it made no inquiry, no training effort, no audit, and no payroll configuration to determine whether its practices actually complied with the statute its own contract invoked. Facts ¶¶ 71-82. "A failure to make further inquiry into the legality of one's conduct" is reckless disregard under First Circuit law. *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 680-81 (1st Cir. 1998). At an absolute minimum, this record creates a triable issue that defeats Defendant's motion on willfulness; on the undisputed facts, it entitles Plaintiff to summary judgment that the violations were willful and that the three-year limitations period applies.  For these reasons, the Court should deny Defendant's motion in its entirety and grant Plaintiff's cross-motion for partial summary judgment.

### STATEMENT OF FACTS

Plaintiff incorporates by reference his Statement of Undisputed Material Facts and the exhibits submitted under Local Rule 56.1. Citations to that statement appear as "Facts ¶ __." The facts material to these cross-motions fall into four categories.[1]

*Mr. Luna's schedule and pay structure.* Mr. Luna was a salaried, non-exempt patrol officer assigned to a four-days-on, two-days-off rotation: four consecutive days of eight hours and thirty minutes of continuous duty, followed by two consecutive days off. Facts ¶¶ 1-7. The City processed police payroll on a bi-weekly cycle and paid Mr. Luna the same fixed base amount every

---

[1] This brief does not address Plaintiff's damages or the mechanics of calculating FLSA overtime for a salaried, non-exempt employee. Plaintiff intends to address those issues in Phase 2 of this litigation.

pay period for his regularly scheduled work, regardless of the actual number of hours he worked in that period. Facts ¶¶ 8-9.

*Overtime hours worked.* Mr. Luna worked more than 40 hours in multiple workweeks and more than 171 hours in multiple 28-day periods throughout the relevant FLSA period. Facts ¶¶ 11-12. The City has never calculated whether it owes him money under either measure. Facts ¶ 54.

*The regular-rate violation.* Mr. Luna received wage augments at various times, including shift differential pay, education incentive pay (Quinn Bill/college pay), an AED/defibrillator stipend, and a Narcan stipend; patrol officers generally could also receive a Field Training Officer stipend. Facts ¶¶ 10, 13. The City has never included any of these augments in Plaintiff's or any other patrol officer's contractual or FLSA overtime rate, has never included them in any 28-day calculation, and has never issued a supplemental payment to correct the omission. Facts ¶¶ 14-23, 52-53.

*The absence of an implemented 207(k) work period.* The City's Rule 30(b)(6) witness testified that the City's entire understanding of what is required to adopt a § 207(k) work period is that the City and the Union agree to it and that the City is unfamiliar with any other legal requirement. Facts ¶ 29. The City's only basis for claiming that it adopted a work period is that similar language has appeared in the CBA for decades. Facts ¶ 30. Beyond that recital, the City cannot identify the original decision-maker, the adoption date, the start date, the end date, any payroll notation, any 28-day cycle calendar, any calculation performed under the 171-hour threshold, or a single officer ever paid FLSA overtime in accordance with a § 207(k) work period. Facts ¶¶ 31-36, 38-54, 67-77.

## PROCEDURAL POSTURE

Plaintiff filed this collective action under 29 U.S.C. § 216(b) on September 5, 2024. Dkt. No. 1. The parties entered a Tolling Agreement so that limitations periods for FLSA claims would be tolled from September 5, 2024 until the Court decides Plaintiff's motion for class or collective certification. ECF Nos. 2, 12. The parties further agreed to phased discovery, with Phase I directed to liability issues concerning Mr. Luna's individual claims and Phase II reserved for damages and collective-action issues should those claims survive summary judgment. ECF No. 12. On June 5, 2026, Defendant moved for partial summary judgment on Count I and on willfulness. ECF No. 36. Plaintiff opposes that motion and cross-moves for partial summary judgment on Count I, Count II, and willfulness.

## ARGUMENT

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome under governing law, and a dispute is genuine if a reasonable jury could resolve it for the non-moving party. *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017); *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018). The Court views the properly supported record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor, *Carlson v. Univ. of New England*, 899 F.3d 36, 43 (1st Cir. 2018), but need not credit "bald assertions, empty conclusions, rank conjecture," or a "mere scintilla" of evidence. *Cherkaoui*, 877 F.3d at 23; *Murray v. Kindred Nursing Ctrs. W. LLC*, 789 F.3d 20, 25 (1st Cir. 2015).

Cross-motions do not alter this standard; each motion is evaluated independently, with reasonable inferences drawn in favor of the party opposing that particular motion. *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5-6 (1st Cir. 2023); *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 537 (1st Cir. 2021). Facts properly set forth in a Local Rule 56.1 statement and not properly controverted by record citation may be deemed admitted. D. Mass. L.R. 56.1; Fed. R. Civ. P. 56(e)(2). Because § 207(k) is Defendant's affirmative defense, Defendant bears the burden of production and persuasion on every element in its own moving papers; it is not enough for Defendant to show the absence of evidence favoring Plaintiff—Defendant must affirmatively establish the exemption with undisputed evidence of its own. *Calvao*, 599 F.3d at 15; *O'Brien*, 350 F.3d at 290-91.

## II. THE CITY'S UNDISPUTED FAILURE TO CALCULATE OVERTIME AT THE FLSA REGULAR RATE ENTITLES PLAINTIFF TO SUMMARY JUDGMENT ON LIABILITY, REGARDLESS OF WHICH THRESHOLD APPLIES

The Court need not resolve the § 207(k) dispute to award Plaintiff summary judgment on liability. Whichever overtime threshold applies, either 40 hours in a workweek or 171 hours in a valid 28-day period, the City's overtime rate had to be calculated using the FLSA "regular rate," and the undisputed record shows it never was.

### A. The FLSA Regular Rate Cannot Be Redefined by Contract

Section 207(a) requires overtime at not less than one and one-half times an employee's "regular rate" for hours worked beyond the applicable threshold, absent a proven exemption. 29 U.S.C. § 207(a)(1). Identifying what compensation belongs in the "regular rate" is the "linchpin" of the overtime calculation. *O'Brien*, 350 F.3d at 294. The regular rate is defined by what actually happens under the employment arrangement, not by the labels the parties choose to use, 29 C.F.R. §§ 778.107-778.122, 778.108, and neither an individual contract nor a collective bargaining

agreement can exclude compensation the FLSA requires to be included. *O'Brien*, 350 F.3d at 294; *McGrath*, 419 F. Supp. 3d at 252.

This is not a novel proposition in this District. This Court and its sister sessions have repeatedly held that CBA-mandated stipends and differentials, including shift differentials, longevity pay, education incentives, hazardous-duty and weapons-qualification stipends, and comparable public-safety premiums, are remuneration for employment that must be folded into the regular rate. *O'Brien*, 350 F.3d at 294-97 (shift differentials, longevity bonuses, and education incentives); *McGrath*, 419 F. Supp. 3d at 252-53 (weapons-qualification and weapons-of-mass-destruction stipends); *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 157 (D. Mass. 2007) (community-service, technological-proficiency, and detective-duty bonuses); *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 264 (D. Mass. 2011) (snow-plow stipend); *see also Pingatore v. Town of Johnston*, No. CA 11-068S, 2011 WL 6056891, at *6 (D.R.I. Oct. 31, 2011), report and recommendation adopted, 2011 WL 6097979 (D.R.I. Dec. 6, 2011) (longevity, hazardous-material, and rescue pay). Massachusetts public employers do not receive special treatment under this line of authority, and the City identifies no basis to depart from it here.

**B. The City Never Calculated Overtime at the Regular Rate**

The undisputed facts establish the violation directly, through the City's own payroll witnesses, Mr. Luna's testimony, and the payroll records themselves. The City has never included shift differential pay, education incentive pay, the AED/defibrillator stipend, the Narcan stipend, or the Field Training Officer stipend in Plaintiff's or any patrol officer's contractual or FLSA overtime rate. Facts ¶¶ 14-18. It has never included any wage augment in connection with any 28-day work-period calculation. Facts ¶ 20. And it has never issued a supplemental payment to any officer to correct the omission. Facts ¶ 21. Defendant does not dispute that these augments are the

kind of remuneration the FLSA requires to be included in the regular rate; its own 30(b)(6) witness confirmed as much. Facts ¶ 22. Because the City instead paid overtime using a flat contractual base rate (Facts ¶ 52) the violation is established without regard to whether the applicable threshold is 40 hours or 171 hours. Facts ¶¶ 10, 13-23, 52-54. Summary judgment for Plaintiff on Counts I and II follows as a matter of law; the amount owed can be resolved in the damages phase, but the legal violation is established now.

### C. If the City Cannot Establish a Valid § 207(k) Work Period, Mr. Luna Is Independently Entitled to Summary Judgment on Count I Under the Ordinary Forty-Hour Rule

Apart from the regular-rate violation, Count I presents a second, independently sufficient basis for summary judgment. Mr. Luna was a salaried, non-exempt employee. Facts ¶ 2. His regularly recurring duty cycle alternated between short weeks of four days (37 hours) and long weeks of five days (42.5 hours). Facts ¶¶ 3, 7; Def.'s Mem. At 4. He worked more than 40 hours in multiple workweeks, and in those weeks the City paid his fixed salary without paying FLSA overtime for the hours above 40. Facts ¶¶ 8-11, 52-54.  Section 207(k) is the City's affirmative defense to that liability, not an element of Plaintiff's claim. If the City cannot establish and put into effect a valid § 207(k) work period for Mr. Luna, as set forth in Section III below, the ordinary 40-hour threshold controls, and Count I liability follows without further inquiry. *O'Brien*, 350 F.3d at 290-92; *Calvao*, 599 F.3d at 15-18.

### D. The City's Remaining Defenses Do Not Excuse the Violation

A generous contractual overtime does not satisfy the FLSA. Defendant emphasizes that the CBA sometimes pays premium compensation for hours outside an officer's regular schedule, including circumstances where the FLSA itself would not require overtime. Def.'s Mem. At 10-11. That observation does not answer Plaintiff's claim. The FLSA sets a statutory floor; a CBA may exceed that floor, but it cannot redefine the regular rate or waive an employee's statutory

overtime rights, no matter how generous the contractual premium. *O'Brien*, 350 F.3d at 294; 29 C.F.R. § 778.108; *McGrath*, 419 F. Supp. 3d at 252. Paying extra for some hours does not excuse miscalculating the rate owed for others.

Mr. Luna's union history and the absence of a prior grievance are legally irrelevant. Defendant cites no authority holding otherwise, because none exists: the FLSA's protections cannot be contracted away, whether by the union or by the individual employee. 29 C.F.R. § 778.108.

## III. THE CITY CANNOT CARRY ITS BURDEN TO ESTABLISH THE SECTION 207(k) EXEMPTION, AND PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT DEFEATING IT

Section 207(k) is a limited partial exemption for qualifying public-safety employers. 29 U.S.C. § 207(k). Like every FLSA exemption, it is construed against the employer claiming it, and the employer bears the burden of proving each element by clear and affirmative evidence. *Calvao*, 599 F.3d at 15; *O'Brien*, 350 F.3d at 290-91. To meet that burden, the City must show that it (1) established a bona fide, fixed, regularly recurring work period of between seven and twenty-eight days; (2) put that work period into actual effect; and (3) paid affected employees in accordance with it. 29 C.F.R. § 553.224(a); *O'Brien*, 350 F.3d at 291 & n.21; *Calvao*, 599 F.3d at 15-18. Each element is independently necessary. The City's motion fails on all three,.

Defendant's motion collapses this three-part standard into a single question: whether the CBA recites the words "twenty-eight (28) day work period" and "section 7(k) of the FLSA." Def.'s Mem. at 7-9. That recital is relevant evidence, but the First Circuit and the Department of Labor ask whether a qualifying work period was actually established and used not merely announced in a form of words. *O'Brien*, 350 F.3d at 291-92; *Calvao*, 599 F.3d at 15-18; Dep't of Labor Ltr. Rul. FLSA-1374 (Jan. 3, 1994). On the undisputed record here, it was not.

### A. A Recurring Six-Day Duty Cycle Cannot Be a "Regularly Recurring" Twenty-Eight-Day Work Period

The exemption applies only where the employer proves that it adopted a work period of between 7 and 28 days that is bona fide, established, and regularly recurring. *O'Brien*, 350 F.3d at 291; 29 C.F.R. § 553.224(a) ("[v]irtually any bona fide, fixed, recurring period of between 7 and 28 days will suffice"); *Calvao*, 599 F.3d at 15-16. A work period is "regularly recurring" only if the employee's duty cycle actually repeats within it either by matching its length or by dividing evenly into it.

Mr. Luna's duty cycle was six days long: four days on, two days off. Facts ¶¶ 3, 6-7. Twenty-eight is not evenly divisible by six ($28 \div 6 = 4.67$). A cycle of six days recurs consistently only within work periods that are themselves multiples of six (6, 12, 18, or 24 days—not 28). As a result, an officer on the 4-2 schedule works a different number of shifts and a different number of hours depending on where within his six-day cycle a hypothetical 28-day window happens to begin. That is the opposite of a regularly recurring period; it is an arithmetic mismatch that cannot be cured by contract language.[2]

The First Circuit's own precedent confirms that this mismatch is dispositive. In *O'Brien*, the Court rejected a municipality's § 207(k) defense where officers worked repeating six-day cycles of four days on and two days off and the municipality could not point to any statement or document adopting a longer period; the Court held the attempted conversion of a six-day cycle

---

[2] At most, the 28-day period recited in the CBA could potentially apply to the separate group of officers assigned to a five-days-on, two-days-off schedule, since a regularly recurring seven-day duty cycle divides evenly into a 28-day period. "An employer may have one work period applicable to all employees, or different work periods for different employees or groups of employees." *O'Brien*, 350 F.3d at 292 (citing 29 C.F.R. § 553.224(b)). But the City does not know, and the CBA does not say which employees the City declared a 207(k) work period for. Facts ¶¶ 67-68, and, as explained below, the City's undisputed failure to implement a 207(k) work period for any employee independently defeats the exemption regardless of duty cycle.

into a 28-day exemption failed "as a matter of logic." 350 F.3d at 291 & n.21. *O'Hara v. Menino* reached the identical conclusion on the identical schedule: a six-day, four-on/two-off cycle "would not be regularly recurring within seven to twenty-eight days." 312 F. Supp. 2d 99, 106 (D. Mass. 2004). *Calvao* confirms the arithmetic rather than undermining it: the First Circuit upheld a 24-day work period there precisely because 24 is evenly divisible by both the municipality's six-day 4-2 cycle and its eight-day 5-3 cycle. 599 F.3d at 17. Twenty-eight is divisible by neither cycle at issue in this case. *See also MacGilvray v. City of Medford*, 585 F. Supp. 2d 175, 178 (D. Mass. 2008); *Edwards v. City of Raleigh*, No. 5:23-CV-683-FL, 2024 WL 4156829, at *9 (E.D.N.C. Sept. 11, 2024).

The City's own CBA underscores the problem. It recognizes both the 4-2 patrol schedule and separate 5-2 assignments. Facts ¶¶ 3-7. An employer may adopt different work periods for different groups of employees, 29 C.F.R. § 553.224(b); *O'Brien*, 350 F.3d at 292, but the City never considered, let alone documented, whether its generic 28-day recital was meant to apply to 4-2 officers, 5-2 officers, or both. Facts ¶¶ 67-68. A single undifferentiated sentence in a CBA cannot establish a fixed 28-day work period for a duty cycle that, as a matter of arithmetic, cannot recur within 28 days. The Court may resolve this as a matter of law: the City failed to adopt a 28-day § 207(k) work period applicable to any employee with a six-day duty cycle, including Mr. Luna.

### B. The City Took No Formal Action to Establish a Work Period

Beyond regular recurrence, the City must prove that a work period was actually established. *Calvao*, 599 F.3d at 15-16; *O'Brien*, 350 F.3d at 291 (work period must be "established *and* regularly recurring"); *Harris v. City of Boston*, 312 F. Supp. 2d 108, 115 (D. Mass. 2004) (awarding summary judgment to plaintiffs where a duty cycle happened to be seven days but no

evidence showed a work period had been established). No single piece of evidence controls that inquiry, but courts in this Circuit and elsewhere look to whether the employer made a public declaration of the work period; whether overtime was tracked, calculated, and paid according to it; whether CBA language addresses its length; whether the payroll period is consistent with it; and whether payroll records identify it. *Calvao v. Town of Framingham*, No. 05-11444, 2008 U.S. Dist. LEXIS 50422, at \*11 (D. Mass. July 2, 2008).

The FLSA does not require that a work period be established through formal public action. *Milner v. City of Ozark*, 165 F.3d 1222, 1223 (per curiam) ("[T]he [§ 207(k)] exemption need not be established by public declaration."). But the presence of formal action such as an ordinance, resolution, memorandum, or comparable affirmative record remains one of the most probative categories of evidence employers typically offer, and even that evidence is not by itself sufficient to establish adoption.[3]

Here, there is none. The City has no document other than the CBA that even uses the words "work period." Facts ¶¶ 56. It has no memoranda, notices, letters, ordinances, or resolutions addressing the adoption of a § 207(k) work period, and no public hearing or meeting ever took place regarding one. Facts ¶¶ 57-58. The City cannot identify anyone involved in the original decision to include the 207(k) language in the CBA, and it is unaware of any conversation between

---

[3] *See, e.g., Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003) (evidence insufficient despite a 1985 fire-chief memorandum stating that "[a] 28-day work cycle will be established"); *MacGilvray v. City of Medford*, 585 F. Supp. 2d 175, 178 (D. Mass. 2008) (denying summary judgment despite a 1985 letter to the Union President specifically referencing "the Fair Labor Standards Act" and "a twenty eight (28) day work period"); *Robertson v. Bd. of Cnty. Comm'rs*, 78 F. Supp. 2d 1142, 1157 (D. Colo. 1999) (denying summary judgment despite 1995 memoranda referencing a 28-day period and specific hour thresholds); *Randle v. City of New Albany, Miss.*, No. 3:05CV74, 2006 WL 2085387, at \*2 (N.D. Miss. July 25, 2006) (an 18-day work period entered into city minute books in 1985 was not enough, standing alone, to prove adoption).

the City and the Union specifically about the work period during any round of bargaining. Facts ¶¶ 65, 67. The total absence of any formal action confirms what the City's own witnesses testified: no one at the City ever affirmatively adopted a 28-day work period. Facts ¶¶ 30, 34.

### B.  The City Never Implemented or Put a Twenty-Eight-Day Work Period Into Effect

Even a properly established work period confers no exemption unless the employer actually implements it. An employer that fails to "announce and take bona fide steps to implement a qualifying work period" remains subject to the ordinary overtime provisions of § 207(a). *O'Brien*, 350 F.3d at 291 n.21. The work period must be "put into effective operation." *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1154 (10th Cir. 1992); *Singer v. City of Waco*, 324 F.3d 813, 819 (5th Cir. 2003). An employer is not relieved of § 207(a) overtime obligations "unless § 7(k) has been claimed and affected employees have actually been paid in accordance with its provisions." Opinion Letter FLSA, 1994 WL 1004749, at *1 (Jan. 13, 1994)*. Calvao frames the same requirement as "making use" of an established period. 599 F.3d at 18.

The City did neither. It does not know what steps, if any, it took to implement a 28-day period. Facts ¶¶ 37-39, 41-44. It performs no payroll tracking, auditing, or accounting on a 28-day basis. Facts ¶¶ 45-46, 61. Its Munis payroll system is configured around an 80-hour bi-weekly cycle and contains no framework for 28-day overtime tracking at all. Facts ¶¶ 47-49. The Police Chief admitted candidly that the City does not apply the 28/171 threshold when paying overtime: "we don't look at to see if you fell into this 28/171 – we just automatically pay you." Facts ¶ 50. And the City cannot identify a single officer, in its entire history, who has ever been paid FLSA overtime in accordance with a § 207(k) work period. Facts ¶ 51.

Every City employee with payroll responsibility confirmed the same reality: none knew when the purported work period begins or ends; none performed any 28-day tracking, auditing, or

accounting; none had even heard of a 28-day work period before this litigation began; none was involved in implementing one; and none ever used an overtime rate calculated by reference to it. Facts ¶¶ 31-36, 41-49. This is not a case in which the City built a working § 207(k) system and made a discrete counting or compliance error. It is a case in which the City never created any mechanism to know when the 171-hour threshold was reached, never used that threshold to pay a single officer, and never calculated the regular rate that would have been required when overtime was actually due. That record defeats Defendant's motion and supports Plaintiff's motion.

**C.  The City's Own Payroll Records Confirm That the Work Period Was Never Implemented**

The Department of Labor's recordkeeping regulation requires a public agency claiming the § 207(k) partial exemption to make "some notation on the payroll records which shows the work period for each employee and which indicates the length of that period and its starting time." 29 C.F.R. § 553.51. A single notation suffices where all employees share an identical work period, but some notation is required.

The City made none. Mr. Luna's payroll records contain no notation of a § 207(k), 28-day, or 171-hour work period, and identify no starting or ending date or time for any such period. Facts ¶ 59. There is nothing in the payroll system from which any employee could determine when a work period begins or ends. Facts ¶ 60. Its payroll system, timecards, payroll summaries, and overtime reports track only weekly or bi-weekly pay periods. Facts ¶ 62. Although the District has observed that compliance with § 553.51 is "at best unclear" as a strict precondition to the exemption, *McGrath*, 419 F. Supp. 3d at 251, the complete absence of any required notation here is powerful, independent evidence that the City never implemented the work period it now asks this Court to enforce against Mr. Luna.

### D. CBA Language Alone Does Not Establish the Exemption by Clear and Affirmative Evidence

Defendant's motion rests on a single proposition: that a recital in a CBA for decades stating "the City declares a twenty-eight (28) day work period in conformity with Section 7(k) of the FLSA" satisfies every requirement of § 207(k). Def.'s Mem. at 7-9. That argument overreads the case law Defendant cites. Courts do treat CBA language as probative evidence of adoption, but no case Defendant cites holds that CBA language alone, untethered from any memorandum, ordinance, resolution, notice, payroll practice, matching duty cycle, or actual 207(k) calculation is sufficient by itself.

The City has nothing more. It has no document beyond the CBA using "work period" language, no memoranda, notices, letters, ordinances, resolutions, public hearings, or meetings reflecting adoption, and no record of who was involved in the original bargaining decision, when it occurred, or what the resulting period's start and end times were meant to be. Facts ¶¶ 56-58, 65, 67. Decisions that reject or question bare recital evidence are far closer to this record than the decisions Defendant cites. *See Harris*, 312 F. Supp. 2d at 115 (announcement matters, but affirmative adoption is still required); *MacGilvray*, 585 F. Supp. 2d at 178 (denying summary judgment where factual issues remained about adoption despite CBA language); *see also Miley v. City of Bogalusa*, No. 08-3931, 2009 U.S. Dist. LEXIS 100696 (E.D. La. Oct. 29, 2009) (a numeric hour reference in a CBA, without more, does not establish a 28-day work period); *Vance v. Vill. of Highland Hills*, No. 1:20-CV-00152, 2020 WL 7490100, at *2-3 (N.D. Ohio Dec. 21, 2020), aff'd, No. 21-3066, 2021 WL 4963365 (6th Cir. Oct. 26, 2021).

Calvao itself confirms the gap in Defendant's proof. The employer there produced a 1986 memorandum identifying the declared work period, and the First Circuit separately found that the officers' actual duty cycles were mathematically "component parts" of the declared 24-day period.

599 F.3d at 17-18. The City has no comparable memorandum, no identifiable start date, no 28-day calendar, no 28-day payroll framework of any kind, and its patrol officers' six-day cycle does not mathematically fit within a 28-day period at all. Facts ¶¶ 34-36, 45-49, 60-64.

### E.  The City's Fourteen-Day Pay Period Does Not Establish a Twenty-Eight-Day Work Period

Defendant's fallback argument is that its 14-day pay period supports its claimed 28-day work period.  Def.'s Mem. at 8-10.  That argument fares no better. A § 207(k) work period is a term of art distinct from a pay period. *Crespo v. Cnty. of Monroe, New York*, No. 10-CV-6590L, 2015 WL 2406112, at 9 (W.D.N.Y. May 20, 2015). Employers need not structure pay periods to coincide with the chosen work period at all. *Adair v. City of Kirkland,* 185 F.3d 1055, 1062 (9th Cir. 1999); *Edwards,* 2024 WL 4156829, at 10; *O'Hara*, 312 F. Supp. 2d at 105.

Some courts do treat a pay period as part of the evidentiary picture but only where the pay period coincides with the claimed work period and is accompanied by documentation and practice showing implementation. *Freeman v. Poling*, 146 F.3d 1291, 1297 (10th Cir. 1998) (14-day work period supported by a 1993 memorandum and a matching 14-day pay period); *Siegmund v. Xuenos*, No. SACV0701387CJCPLAX, 2010 WL 11508369, at *5 (*14-day pay period coinciding with 14-day work period adopted for sworn personnel*); Edwards, 2024 WL 4156829, at 10; Callahan v. City of Sanger*, No. 14-cv-600-*BAM, 2015 WL 2455419, at 11 (E.D. Cal. May 22, 2015); Mollichella v. Bd. of Supervisors W. Brandywine Twp.*, No. 18-cv-4868-JMY, 2020 WL 1904593 (E.D. Pa. Apr. 16, 2020).

This case has none of that supporting evidence, and the mismatch cuts the other way. No case Defendant cites holds that a 14-day pay period alone, without a matching 28-day calendar, 28-day tracking, 28-day notation, or 28-day overtime calculation, establishes a 28-day work period. *Singer*, 324 F.3d at 813 (pay-period evidence is at most one fact for the factfinder, not a

substitute for implementation). Two 14-day pay periods do not become a 28-day FLSA work period through arithmetic alone, absent the implementation evidence entirely missing here.

### G. The City's Remaining Arguments Do Not Satisfy Its Burden

Defendant argues that it could pay contractual overtime more generously than the FLSA requires without forfeiting § 207(k). Def.'s Mem. at 10-11 (citing *Adair*, 185 F.3d at 1061-62; *Lamon*, 972 F.2d at 1152; *Franklin v. City of Kettering, Ohio*, 246 F.3d 531, 535-36 (6th Cir. 2001); *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 806 (11th Cir. 1992)). Plaintiff does not dispute that abstract proposition. The problem is not that the City paid more than § 207(k) would have required.  It is that the City never established a § 207(k) system in the first place, and so never had a baseline against which any "more generous" payment could be measured. Facts ¶¶ 45-54, 71-82.

For all of these reasons, the Court should deny Defendant's motion for summary judgment on Count I and grant Plaintiff's cross-motion declaring that the City failed to establish a valid 28-day § 207(k) work period applicable to Mr. Luna. At minimum, if the Court identifies any genuine factual dispute bearing on adoption or implementation, that dispute defeats Defendant's motion, because Defendant bears the burden of proof on its own exemption.

### IV. THE CITY'S RECKLESS DISREGARD OF ITS FLSA OBLIGATIONS PRECLUDES SUMMARY JUDGMENT ON WILLFULNESS AND ENTITLES PLAINTIFF TO JUDGMENT THAT THE THREE-YEAR LIMITATIONS PERIOD APPLIES

A violation is willful when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Relevant indicia include a failure to keep adequate payroll records, manipulation of records, off-the-books payments, a lack of diligence in researching FLSA requirements, and ignoring employee complaints. *Pineda v. Skinner Servs., Inc.*, No. 16-12217-FDS, 2020 WL 5775160, at 12 (D. Mass. Sept. 28, 2020) (quoting Chao v. Hotel Oasis, Inc., 493

F.3d 26, 35 (1st Cir. 2007)); *Clark v. Cap. Vision Servs., LLC,* No. 22-cv-10236-DJC, 2024 WL 3458525, at 29 (D. Mass. July 18, 2024). A mere failure to investigate is not always sufficient, *McGrath*, 419 F. Supp. 3d at 259, but "a failure to make further inquiry into the legality of one's conduct might constitute a reckless disregard of the FLSA." *Baystate*, 163 F.3d at 680-81; *Clark*, 2024 WL 3458525, at *30.

The undisputed record establishes reckless disregard as a matter of law—or, at an absolute minimum, a triable question that defeats Defendant's motion. The City knew its own CBA invoked § 207(k) and a 171-hour threshold; that language is the entire basis for the exemption it now claims. Facts ¶ 55. The City assigned specific officials responsibility for wage-and-hour compliance and police department payroll: a Personnel Director responsible for wage-and-hour compliance, a Payroll Supervisor responsible for police payroll, and an Office Manager who enters police payroll into the City's system. Facts ¶¶ 25-28. Yet those very officials did not understand the 28/171 framework, did not know whether or how it had been adopted, did not know when it began or ended, did not know how it was meant to apply, and never tracked it. Facts ¶¶ 29-36, 41-46, 71-74. The Chief of Police himself testified that the framework was "super confusing" and that even the City's own auditing department could not apply it. Facts ¶ 72. The Payroll Supervisor received no training on it when she assumed her role and was entirely unaware of the 28-day framework. Facts ¶ 73. The Office Manager likewise received no training. Facts ¶ 74.

The City's regular-rate violation independently supports willfulness. The City never included the required wage augments in the FLSA regular rate, never audited whether its regular-rate calculation was complete, and never made a supplemental payment to correct the omission. Facts ¶¶ 14-23, 79. That omission was not a one-time oversight; it was the City's uniform practice across every pay period, for every patrol officer, for years. Facts ¶¶ 19-21. Courts have repeatedly

held that comparable CBA-mandated payments must be included in the regular rate, *O'Brien*, 350 F.3d at 294-97; *McGrath*, 419 F. Supp. 3d at 252-53; *Murphy*, 516 F. Supp. 2d at 153, 157; *Rudy*, 777 F. Supp. 2d at 264; *Pingatore*, 2011 WL 6056891, at *6, and the City identifies no independent legal review, Department of Labor consultation, compliance audit, or investigation that might have led it to believe otherwise. Facts ¶¶ 77-80. The City's total failure to make any meaningful inquiry into requirements it now claims to have followed, while continuing for years to pay overtime on a flat contractual base rate, is not a good-faith interpretive dispute on this record—it is the reckless disregard the case law describes.

Defendant responds that there were no employee complaints and no prior grievance specifically about the § 207(k) work period. Def.'s Mem. at 12-13. Employee complaints are one possible indicator of willfulness; they are not a precondition to it, and the FLSA's compliance obligations run to the employer regardless of whether any particular employee happens to complain. Defendant also points to the presence of counsel during collective bargaining. Id. But the record does not show that the City ever obtained legal advice about whether a 28-day work period actually applied to officers on a six-day duty cycle, whether its payroll system implemented § 207(k) in practice, whether it was tracking hours worked above 171 in any period, or whether required wage augments belonged in the regular rate. Facts ¶¶ 77-80. A CBA sentence invoking § 207(k) made the FLSA issue obvious to the City; it did not excuse the City from making any inquiry into how the statute actually operates.

Nor can the City characterize this record as a harmless technical error. This is not a case where an employer built a functioning § 207(k) system and miscounted an isolated pre-shift task or misclassified a single stipend. The City operated for years with no fixed 28-day start date, no payroll notation, no 171-hour tracking, no 207(k) overtime calculation, no regular-rate

augmentation, no audit, and no training for the personnel responsible for administering it. Facts ¶¶ 35-36, 45-54, 71-82. Courts confronting comparable records have found willfulness as a matter of law. *See Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016) (city's FLSA violation was willful despite qualifying for the § 207(k) partial exemption, where it excluded wage augments from the regular rate without investigating whether the exclusion was lawful); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014) (city acted willfully where it had notice from earlier litigation, failed to investigate adequately, and continued the challenged practice).

For these reasons, the Court should deny the City's motion on willfulness and grant Plaintiff's cross-motion that the three-year limitations period applies. At an absolute minimum, this record presents a triable issue that independently defeats Defendant's motion.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Partial Summary Judgment and grant Plaintiff's Cross-Motion for Partial Summary Judgment by ruling that: (1) the City failed to establish a valid 28-day § 207(k) work period applicable to Mr. Luna; (2) Plaintiff is entitled to summary judgment on Count I under the ordinary forty-hour overtime rule; (3) Plaintiff is entitled to summary judgment on Counts I and II because the City failed to calculate overtime using the FLSA regular rate, including all required wage augments; and (4) the City's violations were willful, making the three-year FLSA limitations period applicable. In the alternative, any disputed factual issue concerning § 207(k) adoption or willfulness must be resolved against Defendant's motion, because Defendant bears the burden of proof on its own exemption and because Plaintiff has adduced more than sufficient evidence for a reasonable factfinder to find willfulness.

Dated: July 6, 2026

Plaintiff
By His Attorneys,


**/s/ Jeffrey S. Morneau**
Jeffrey S. Morneau, Esquire (BBO #643668)
CONNOR & MORNEAU, LLP
136 Dwight Road
Longmeadow, Massachusetts 01106
Tel:   (413) 455-1730
Fax:   (413) 455-1594
jmorneau@cmolawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the date of its filing.


**/s/ Jeffrey S. Morneau**
Jeffrey S. Morneau