**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS (WESTERN DIVISION)**

| | |
|---|---|
| EFRAIN LUNA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>CITY OF WESTFIELD,<br><br>         Defendant. | Civil Action No. 3:24-cv-30109-MGM |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Plaintiff

Efrain Luna ("Plaintiff" or "Mr. Luna") hereby submits this Statement of Undisputed Material

Facts in Support of his Motion for Partial Summary Judgment.

**Plaintiff's Employment, Hours of Work, and Pay**

1.    Plaintiff was employed by the City of Westfield as a patrol officer for the Westfield Police

Department at various times between September 5, 2021, and his last day of employment.

Affidavit of Efrain Luna ("Luna Aff.") attached hereto as **Exhibit A**, at ¶ 2.

2.    Defendant classified Plaintiff as a salaried, non-exempt employee. Luna Aff. ¶ 3.

3.    Plaintiff was regularly scheduled to work a four-days-on, two-days-off rotation ("4-2

schedule"). 2022-2025 CBA, attached hereto as **Exhibit B**, Art. 24.3 – 24.4; Luna Aff. ¶

4.

4.    Certain officers assigned to the detective bureau, traffic bureau, court officer position,

community policing, and school resource officer positions are excepted from the 4-2

schedule and instead work five consecutive days, Monday through Friday, with two consecutive days off weekly, and receive 17 additional days off annually to equalize their total days off with officers on the 4-2 schedule. CBA, Art. 6.25; Art. 24.1; Luna Aff. ¶ 4.

5.  Effective July 1, 2015, one patrol officer may also be assigned to a five-days-on, two-days-off administrative schedule, awarded to the most senior officer who bids for it. CBA, Art. 6.25; Art. 24.1; Luna Aff. ¶ 4.

6.  Plaintiff was not assigned to either the 5-2 bureau schedule or the 5-2 administrative schedule and was scheduled to work the 4-2 schedule between September 5, 2021 and the present. CBA, Art. 6.25; Art. 24.1; Luna Aff. ¶ 4.

7.  The standard work schedule for patrol officers consists of four consecutive days of eight hours and thirty minutes of continuous duty per day, followed by two consecutive days off. CBA, Art. 24.3 – 24.4; Deposition of Chief Jerome Pitoniak ("Pitoniak Tr."), at 9:15 – 10:11; 26:2-13 attached hereto as **Exhibit C**; Luna Aff. ¶ 5.

8.  The City's payroll workweek runs from Saturday at 12:00 a.m. through Friday at 11:59 p.m. and is processed on a bi-weekly basis. Deposition of Melissa Barnes ("Barnes Tr."), at 16:2-9; Deposition of Kimberly Osowski ("Osowski Tr.") attached hereto as **Exhibit D**, at 19:1-8; Defendant's Response to Plaintiff's First Set of Interrogatories ("Interrog. Resp.") attached hereto as **Exhibit E**, at No. 7.

9.  Defendant paid Plaintiff a fixed base amount ("salary") every bi-weekly pay period for his regularly scheduled work shifts. This fixed base amount was the same each bi-weekly pay period, calculated using the appropriate step value in Appendix A of the CBA, and was paid to Plaintiff regardless of the actual number of hours that he actually worked during those two weeks. Pitoniak Tr. 10:4-11; 11:3-21; 28:7-18; Deposition of Michael McCabe

2

("McCabe Tr.") attached hereto as **Exhibit F**, at 6:23 – 7:22; Luna Aff. ¶¶ 6–7; WESTFIELD_LUNA 000001–000037 attached hereto as **Exhibit G**; WESTFIELD_LUNA 000038–000060 attached hereto as **Exhibit H**.

10.    In addition to Plaintiff's fixed base salary, Plaintiff received, at various times, additional compensation including but not limited to contractual overtime pay for extra shifts or hours worked, shift differential pay, an education incentive (Quinn Bill/college pay), an AED/defibrillator stipend, and a Narcan stipend. Pitoniak Tr. 29:1-13; CBA, Art. 24; Luna Aff. ¶ 8; WESTFIELD_LUNA 000038–000060.

11.    At various times between September 5, 2021, and his last day of employment, including times between September 5, 2022, and his last day of employment, Plaintiff worked in excess of 40 hours within the workweek. Luna Aff. ¶ 10; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

12.    At various times between September 5, 2021, and his last day of employment, including times between September 5, 2022, and his last day of employment, Plaintiff worked in excess of 171 hours within various 28-day periods of time. Luna Aff. ¶ 10; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

**The Wage Augments and Regular Rate of Pay**

13.    Patrol officers, including Plaintiff, can potentially receive wage augments in addition to base salary, including a shift differential, an education incentive (Quinn Bill/college pay), an AED/defibrillator stipend, a Narcan stipend, and a Field Training Officer stipend. CBA, Art. 24; Deposition of Eric Hall ("Hall Tr.") attached hereto as **Exhibit I**. 47:11-16; 90:3-16; 91:1-15; Luna Aff. ¶ 8.

14. Defendant has never included the shift differential in calculating Plaintiff's or any other patrol officers contractual or FLSA overtime rate. Hall Tr. 47:11-16; 90:3-4; 91:1-4; Larkham Tr. 16:11-20; Luna Aff. ¶ 9; WESTFIELD_LUNA 000038–000060.

15. Defendant has never included the education incentive (Quinn Bill/college pay) in calculating Plaintiff's or any other patrol officers contractual or FLSA overtime rate. Hall Tr. 90:5-8; 91:5-8; Luna Aff. ¶ 9; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

16. Defendant has never included the AED/defibrillator stipend in calculating Plaintiff's or any other patrol officers contractual or FLSA overtime rate. Hall Tr. 90:9-12; 91:9-15; Luna Aff. ¶ 9; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

17. Defendant has never included the Narcan stipend in calculating Plaintiff's or any other patrol officers contractual or FLSA overtime rate. Hall Tr. 90:13-16; 91:9-15; Luna Aff. ¶ 9; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

18. Defendant has never included the Field Training Officer stipend in calculating patrol officers contractual or FLSA overtime rate. Hall Tr. 90:13-16; 91:9-15; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

19. During the FLSA class period, none of the foregoing wage augments — including the shift differential, education incentive, AED/defibrillator stipend, and Narcan stipend — were included in the calculation of Plaintiff's or any other patrol officers' regular rate of pay for purposes of calculating overtime under the FLSA. Hall Tr. 47:11-16; 90:3-16; 91:1-15; Luna Aff. ¶ 9; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

20. Defendant has never included any wage augments in the regular rate of pay in connection with any twenty-eight-day work period calculation. Hall Tr. 47:11-16; 90:3-16; 91:1-15.

21. Defendant has never issued any supplemental payment to Plaintiff's or any other patrol officers to account for wage augments that are required to be included in the regular rate of pay under the FLSA. Hall Tr. 47:11-16; Luna Aff. ¶ 12; WESTFIELD_LUNA 000001–000037; WESTFIELD_LUNA 000038–000060.

22. Defendant does not dispute that certain wage augments, including the shift differential, education incentive, AED/defibrillator stipend, and Narcan stipend, are required to be included in the regular rate of pay under the FLSA. Hall Tr. 90:3-16; 91:1-15.

23. Defendant's Interrogatory Answer confirmed that the City calculated Plaintiff's or any other patrol officers pay, wage augments, and overtime "in accordance with the applicable CBA's" but did not identify any wage augments as having been included in the FLSA regular rate calculation. Interrog. Resp. No. 15; Hall Tr. 47:11-16; 90:3-16; 91:1-15.

**Individuals with Information**

24. Michael McCabe is the current Mayor of Westfield and a former Captain of the Westfield Police Department, and was employed by the Department from 1999 to 2021. McCabe Tr. 24:4-12.

25. Anne Larkham is the City's Personnel Director and the person responsible for wage and hour compliance for the City. Deposition of Anne Larkham ("Larkham Tr.") attached hereto as **Exhibit J**, at 8:3-9; 32:10-14.

26. Melissa Barnes is the City's Payroll Supervisor and the person responsible for processing police department payroll. Deposition of Melissa Barnes ("Barnes Tr.") attached hereto as **Exhibit K**, at 10:9-21; 11:17-24; 14:13-20.

27. Kimberly Osowski is the Police Department Office Manager for the City and is responsible for entering police department payroll into the City's Munis payroll system. Osowski Tr. 8:1-17; 9:1-5.

28. Eric Hall was the City's 30(b)(6) witness and a Captain in the Police Department. Hall Tr., at 1-11.

**The City's Failure to Adopt a 207(k) Work Period**

29. Defendant's 30(b)(6) representative testified that Defendant's understanding of what is required to adopt a 207(k) work period is only that it be agreed to between the City and the Union, and that Defendant is not familiar with any other legal requirements under the FLSA for establishing a valid 207(k) work period. Hall Tr. 19:12 – 20:3.

30. Defendant's only basis for its claim that it adopted the purported 207(k) work period is that the language has been in the CBA for at least thirty years. Hall Tr. 21:1-10; 21:23 – 22:6.

31. Michael McCabe did not know whether the City had ever adopted a 207(k) work period. McCabe Tr. 16:7-17.

32. Mayor McCabe, who served as a Captain responsible for overseeing police department operations including budgetary matters from 2008 to 2021, had never heard of a 207(k) work period until after litigation commenced. McCabe Tr. 16:7-17.

33. Barnes does not know what the Federal 28/171 standard for statutory overtime means. Barnes Tr. 16:23 – 17:2.

34. Defendant cannot identify anyone who was involved in the negotiation or decision that led to the 207(k) language being included in the original CBA. Hall Tr. 22:7-11; 23:1-3; 29:17 – 30:15.

6

35. Defendant is unable to identify the original start date or the specific or approximate date the purported 207(k) work period was adopted or started and has not documented the beginning and ending dates of any purported 207(k) work period. Hall Tr. 21:1-10; 21:23 – 22:6; 30:20 – 31:24; 32:6-14; Larkham Tr. 21:23-24; 22:1-8; 23:6-13; Barnes Tr. 14:8-10; Osowski Tr. 19:13-15; 20:3-13.

36. Defendant has not documented the beginning and ending dates of any purported 207(k) work period and does not know whether the work period start date falls at the beginning, middle, or some other point within the bi-weekly pay period.  Hall Tr. 30:20 – 31:24; 32:6-14; Larkham Tr. 21:23-24; 22:1-8; 23:6-13; Barnes Tr. 14:8-10; Osowski Tr. 19:13-15; 20:3-13; Pitoniak Tr. 26:2-13; 40:13-16.

**The City's Failure to Implement or Put Into Effect a 207(k) Work Period**

37. Defendant has no written record of the initial implementation of the purported 207(k) work period provision. Interrog. Resp. No. 11.

38. Defendant does not know what steps, if any, it took to implement the purported 207(k) work period beyond including language in the CBA. Hall Tr. 21:11-17; 32:22 – 33:7; Interrog. Resp. No. 11.

39. McCabe testified that the 207(k)/28-171 rule "was probably not implemented in formal language." McCabe Tr. 17:14-15.

40. McCabe is not aware of any patrol officer in the City ever being paid overtime compensation in accordance with either a 207(k) work period or the 28/171 rule. McCabe Tr. 16:18-22.

41. Larkham does not know how or whether the City actually adopted the 28/171 work period and learned of it only because it has been in the CBA. Larkham Tr. 17:12-23; 26:1-3; 50:3-13.

42. Larkham was not involved in implementing the 28-day work period, does not know what steps the City took to implement it, does not know who was involved in announcing or implementing it, and does not know whether the work period is a fixed or variable period. Larkham Tr. 22:9-19; 23:1-3.

43. Osowski does not know how the City is applying the purported 28-day work period. Osowski Tr. 19:13-15; 20:3-13.

44. Defendant is unaware of anything that was done in the payroll or finance department to implement the 207(k) work period at any time. Hall Tr. 33:3-12; Barnes Tr. 14:8-10; 17:6-9.

45. Defendant does not perform any payroll tracking, auditing, or accounting based upon a twenty-eight-day period of time. Hall Tr. 33:3-12; 34:12-17; Barnes Tr. 17:6-22; Larkham Tr. 25:7-10.

46. Osowski does not track hours within the 28-day work period and does not know whose role it is to do so. Osowski Tr. 12:9-16.

47. The City's Munis payroll system is configured to process police officer compensation based on a standard 80-hour bi-weekly pay period running from Saturday at 12:00 a.m. through Friday at 11:59 p.m. Barnes Tr. 16:2-9; 24:12-14; 25:5-6; Osowski Tr. 10:10-13; 19:1-8.

48.    The City's Munis payroll system contains no framework for calculating or tracking overtime based on a 28-day work period. Barnes Tr. 16:2-9; 24:12-14; 25:5-6; Osowski Tr. 10:10-13; 19:1-8.

49.    Osowski enters police officer overtime into Munis based on individual overtime slips, without reference to any 28-day accumulation. Osowski Tr. 9:9-15; 10:16-20; 12:9-16.

50.    Chief Pitoniak admitted that the City does not apply the 207(k) overtime threshold when paying overtime to patrol officers, testifying: "we don't look at to see if you fell into this 28/171 — we just automatically pay you." Pitoniak Tr. 31:14-24.

51.    Defendant cannot identify a single police officer, including Plaintiff, who has ever been paid FLSA overtime in accordance with a 207(k) work period. Hall Tr. 35:15-20; 36:9-12; McCabe Tr. 16:18-22.

52.    Defendant has never used an overtime rate other than 1.5 times or 2 times the applicable contract base rate of pay as opposed to the FLSA regular rate of pay. Hall Tr. 35:15-20; Luna Aff. ¶ 14.

53.    Defendant has never issued any supplemental check or payment to Plaintiff to account for any compensation that may be owed to Plaintiff under the FLSA. Hall Tr. 34:18 – 35:5; Luna Aff. ¶ 11.

54.    Defendant has not calculated whether it owes Plaintiff any money, even assuming a valid 207(k) adoption. Hall Tr. 108:17 – 109:2.

## No Public Declaration of 28 Day 207(k) Work Period

55.    The only written evidence Defendant relies upon to support its claim that it adopted a 207(k) work period is language in the CBA stating: "The City declares a twenty-eight (28) day work period in conformity with Section 7(k) of the FLSA." Hall Tr., at 40:21 – 41:2.

9

56.  Defendant is not aware of any documents other than the CBA that contain the words "work period" anywhere within the City. Hall Tr. 23:10 – 24:21.

57.  Defendant has no documents, memos, notices, letters, city ordinances, city resolutions, or other written communications other than the CBA reflecting any adoption, announcement, or establishment of a 207(k) work period. Hall Tr. 22:12-15; 23:4-24; 25:1-7.

58.  There were no public hearings or meetings that took place regarding the adoption of a 207(k) work period. Hall Tr. 25:20 – 26:5.

**The City's Payroll Records Relating to a 207(k) Work Period**

59.  Plaintiff's payroll records contain no notation of a 207(k) work period or a 28-day work period or 171-hour work period, and do not indicate the starting time or ending time or date of any such work period. Hall Tr. 86:2-11; 91:17 – 92:1; Luna Aff. ¶ 13; Larkham Tr. 21:23-24; 22:1-8; 23:6-13..

60.  There is nothing in the payroll system from which Larkham or any Patrol Officer could determine when the work period begins or ends. Larkham Tr. 21:23-24; 22:1-8; 23:6-13.

61.  The City never tracked hours against the 28-day or 171 hour period of time.  Larkham Tr. 23:19-23; Pitoniak Tr. 24:13-17; 31:14-24.

62.  The City's payroll system, timecards, payroll summaries, and overtime reports track weekly or bi-weekly pay periods only, not 28-day work periods of 171 hours. Barnes Tr. 16:2-9; 17:6-22; 24:12-14; 25:5-6; Osowski Tr. 10:10-13; 19:1-8; Hall Tr. 33:3-12; 34:12-17; 35:15-20; 36:9-12.

63.  Defendant cannot produce a calendar of recurring 28-day cycles for the relevant years. Hall Tr. 30:20 – 31:24; 32:6-14; Interrog. Resp. No. 8.

10

64.    No records exist showing how the City calculated overtime under the 207(k) work period. Hall Tr. 33:3-12; Interrog. Resp. No. 11.

**The Collective Bargaining Agreement and 207(k) Work Period**

65.    Defendant does not have a copy of any original document or collective bargaining agreement in which the 207(k) work period language first appeared. Hall Tr. 22:12-15.

66.    The CBA does not contain any notation or other information identifying the starting date or time or ending date or time of any purported 207(k) work period. Hall Tr. 86:2-11; 91:21 – 92:1.

67.    Defendant is not aware of any specific conversations between the Union and the City about the 207(k) work period that occurred during any contract negotiations. Hall Tr. 101:24 – 102:3.

68.    No person within the City asked whether the claimed work period was valid for all employees. Hall Tr. 99:17 – 100:6; Interrog. Resp. No. 16.

69.    No party ever raised a question during collective bargaining negotiations as to whether the CBA complied with the Fair Labor Standards Act. Hall Tr. 99:17 – 100:6; Interrog. Resp. No. 16.

70.    The City made numerous changes to the language in the section of the CBA relating the declaration of the 207(k) work period over a period of decades.  *See* 1996-1998 CBA, attached hereto as **Exhibit L**; 1999-2002 CBA attached hereto as **Exhibit M**; 2007-2010 CBA attached hereto as **Exhibit N**; 2011-2014 CBA attached hereto as **Exhibit O**; 2014-2016 CBA attached hereto as **Exhibit P**; 2016-2019 CBA attached hereto as **Exhibit Q**; redlined comparison of CBA language attached hereto as **Exhibit R**.

11

**The City's Reckless Conduct and Lack of Good Faith**

71.   Chief Pitoniak testified that he understood that if officers worked more than 171 hours in a 28-day period they would be entitled to overtime under the FLSA. Pitoniak Tr. 24:13-17; 31:14-24.

72.   Chief Pitoniak does not understand the 28/171 framework, stating "I don't really understand that whole other 28/171 non-exempt whatever," and that even the City's own auditing department was similarly unable to understand how to apply it, characterizing the rule as "super confusing." Pitoniak Tr. 24:7-17.

73.   Barnes received no official training when she became Payroll Supervisor in August 2022. Despite being solely responsible for processing police department payroll, she was entirely unaware of the 28-day work period framework and has self-taught herself on the Munis payroll system, acknowledging there are areas of the system she does not know. Barnes Tr. 9:10-15; 14:8-10; 33:21 – 34:6.

74.   Osowski received no training on the purported 28-day work period when she assumed her role. Osowski Tr. 20:3-9.

75.   Prior to an internal City meeting attended by the City's auditor, prior Chief of Police, and the City's own attorney, the 28/171 issue was, in Chief Pitoniak's words, "one of those things everyone always heard about but didn't really know what it meant." Pitoniak Tr. 25:12-24; 39:6-9

76.   McCabe acknowledged that employers are required by federal and state law to keep records of hours worked by non-exempt employees and that there are record-keeping requirements for payroll and timekeeping records applicable to the City but stated he did not know the consequences of failing to maintain such records. McCabe Tr. 38:13 – 39:7.

77.    Defendant identified no independent legal review, no Department of Labor consultation, no compliance audit, no investigation, and no specific legal advice received regarding into FLSA or wage and hour compliance for the Police Department. Interrog. Resp. Nos. 6, 16, 17; Hall Tr. 26:6-11; 26:22 – 27:1; 29:4-8; 99:17 – 100:6; 109:3-8; Larkham Tr. 25:11-15; 32:23 – 33:4;

78.    The City never audited whether officers exceeded 171 hours when all hours worked were counted. Hall Tr. 26:22 – 27:1; Larkham Tr. 25:11-15; 32:23–33:4; Barnes Tr. 17:6-22.

79.    The City never audited whether the regular rate of pay included all wage augments required to be included under the FLSA. Hall Tr. 26:22 – 27:1; 47:11-16; 90:3-16; 91:1-15.

80.    The City made no inquiry into whether its pay practices complied with the FLSA despite having personnel designated as responsible for wage and hour compliance. Hall Tr. 26:22 – 27:1; Larkham Tr. 25:11-15; 32:23 – 33:4; Interrog. Resp. Nos. 6, 16, 17.

81.    Defendant is not aware of any steps taken to ensure that employees are paid in accordance with the purported 207(k) work period. Hall Tr. 34:12-17.

82.    The City did not identify or track any fixed 28-day work period in its payroll system. Hall Tr. 33:3-12; Barnes Tr. 17:6-22; Larkham Tr. 23:19-23.

Dated: July 6, 2026

Plaintiff
By His Attorneys,


**/s/ Jeffrey S. Morneau**
Jeffrey S. Morneau, Esquire (BBO #643668)
CONNOR & MORNEAU, LLP
136 Dwight Road
Longmeadow, Massachusetts 01106
Tel:    (413) 455-1730
Fax:    (413) 455-1594
jmorneau@cmolawyers.com


## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the date of its filing.


**/s/ Jeffrey S. Morneau**
Jeffrey S. Morneau